DIANE J. HUMETEWA
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Kevin.Rapp@usdoj.gov

JENNIFER E. GREEN
Assistant U.S. Attorney
Arizona State Bar No. 018792
Two Renaissance Square
40 North Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone (602) 514-7500
Jennifer.Green@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Martin Angel Gonzalez,<br><br>Defendant. | No. CR 05-0264-007-PHX-SMM<br><br>**TRIAL MEMORANDUM** |

The United States of America, by and through undersigned counsel, submits the following trial memorandum on legal issues that may arise during the trial of this case.

Respectfully submitted this 10th day of September, 2008.

                                        DIANE J. HUMETEWA
                                        United States Attorney
                                        District of Arizona

                                        S/Kevin M. Rapp
                                        KEVIN M. RAPP
                                        Assistant U.S. Attorney

                                        S/Jennifer E. Green
                                        JENNIFER E. GREEN
                                        Assistant U.S. Attorney

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. STATEMENT OF THE CASE**

**A.** **Indictment**

On November 16, 2006, the government charged Martin Angel Gonzalez (Gonzalez) and 19 others in a Fifth Superseding Indictment CR-05-0264-PHX-SMM. The indictment charges the defendant Martin Angel Gonzalez with the following eight counts:

Count 1: Conspiracy to Possess with Intent to Distribute Marijuana in violation of Title 21, U.S.C., Sections 846, 841(a)(1) and 841(b)(1)(A)(vii).

Count 2: Possession with the Intent to Distribute Marijuana in violation of Title 21, Sections 841(a)(1) and 841(b)(1)(D).

Count 3: Possession with the Intent to Distribute Marijuana in violation of Title 21, Sections 841(a)(1) and 841(b)(1)(C).

Count 4: Conspiracy to Commit Money Laundering in violation of Title 18, U.S.C. Section 1956(h).

Count 55: Conspiracy to Maintain a Drug Involved Premises in violation of Title 21, U.S.C. Sections 856(a)(2) and 841(a)(1).

Count 56: Managing a Drug Involved Premises in violation of Title 21, U.S.C. Section 856(a)(2) and Title 18, USC, Section 2.

Count 62: Managing a Drug Involved Premises in violation of Title 21, U.S.C. Section 856(a)(2) and Title 18, USC, Section 2.

Count 63: Engaging in a Continuing Criminal Enterprise in violation of Title 21, U.S.C. Section 848.

**B.** **Custody Status and Defense Counsel**

Defendant Martin Angel Gonzalez is in custody and is represented by Rena P. Glitsos, appointed.

**C.** **Interpreter**

The United States will require an interpreter for one of its witnesses: Aquiles

Maldonado-Martinez. Defendant speaks English and does not require a Spanish interpreter.

**D.  Trial Status and Jury Waiver**

This case is set for trial on Tuesday, September 16, 2008, at 9:00 a.m. before the Honorable Stephen M. McNamee. The Government expects that its case in chief will take approximately four to six weeks. Defendant has not filed a jury waiver in this case.

**E.  Use of PowerPoint and Sanctions II**

The government intends to use PowerPoint for opening statement and closing argument. Additionally, the government intends to use Sanctions II (trial presentation software) to introduce documents, photos, videos, and other evidence during the course of the trial.

**F.  Exhibits**

The Government will file an exhibit list on September 15, 2008. The Government requests an opportunity to examine defendants' exhibits pretrial.

**G.  Stipulations**

The parties have not entered into any stipulations to date.

**H.  Jury Instructions**

The Government will file proposed jury instructions under separate cover.

**II. SUMMARY OF THE CASE**

The government expects the evidence to show that Martin Angel Gonzalez since at least 1994 was the head of a marijuana trafficking organization that distributed multi-ton quantities of marijuana across the United States. The sales yielded millions of dollars in drug proceeds. Specifically, the government expects the evidence to show that Gonzalez directed his associates, including those listed in the Indictment and others, in conducting numerous drug trafficking and money laundering transactions. During the conspiracy, Gonzalez and associates possessed with the intent to distribute approximately 30,000 kilograms of marijuana, and obtained at least $20 million in proceeds from his criminal activities.

At trial, the government will present numerous cooperating co-defendants and co-

conspirators who will detail their association with Gonzalez and his drug trafficking activities. To corroborate their testimony, the government will present numerous law enforcement agents who participated in vehicle stops, arrests, the execution of search warrants, postal express package seizures, and criminalists who analyze marijuana samples. Morever, the government will present documentary exhibits that further corroborate the testimony of cooperating witnesses. Those documents include parcel shipping receipts, bank records, phone records, real estate deeds, hotel records, insurance records, car dealership records, records of airline itineraries, casino records, court records, and other documents. Lastly, the government will present numerous photos, videos, and audio recordings that demonstrate Gonzalez's association with various co-conspirators.

## III. PERTINENT LAW

### A.    21 U.S.C. §846 Drug Conspiracy

#### 1. Elements of the Offense

Title 21 United States Code §846 provides that:

> Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

This memo will focus on the conspiracy aspect of the statute. The elements of a conspiracy as follows:

(a)     an agreement by two or more persons to accomplish an illegal purpose;
(b)     the requisite intent to commit the underlying substantive offense.

*United States v. Shabani*, 513 U.S. 10 (1994).

#### a. The Agreement

The agreement is the essence of the crime of conspiracy. *United States v. Iriarte-Ortega*, 113 F.3d 1022, 1024 (9th Cir. 1997). It not only constitutes the *actus reus*, but is important because one must look to the nature of the agreement to decide whether the requisite mental state is also present. *See id.* The government need not prove that a formal or explicit agreement existed; rather, the agreement may be inferred from the defendants' acts pursuant to the scheme,

4

or other circumstantial evidence. *See United States v. Bibbero*, 749 F.2d 581, 587 (9th Cir. 1984). The fact that each defendant had reason to believe that his own benefits were dependant upon the success of the entire venture is probative of the existence of an agreement. *See United States v. Arbelaez*, 719 F.2d 1453, 1459 (9th Cir. 1983). A conspiracy may also be proven by circumstantial evidence that the defendants acted together with a common goal. *See Iriarte-Ortega*, 113 F.3d at 1024. Coordination between conspirators is strong circumstantial proof of agreement; as the degree of coordination between conspirators rises, the likelihood that their actions were driven by an agreement increases. *Id.* Moreover, the jury may infer the existence of an agreement from concert of action --all of the parties working together understandingly, with a single design for the accomplishment of a common purpose. *Id.*

  **b.**  **Overt Act**

Proof of an overt act is not required to establish a violation of 21 U.S.C. §846. *Shabani*, 513 U.S. at 17 (1994).

  **c.**  **Knowledge**

To support a conspiracy conviction, evidence must be produced to show that the person charged as a co-conspirator had knowledge of the conspiracy and acted in furtherance of it. *See United States v. Wiseman*, 25 F.3d 862, 865 (9th Cir. 1994). To prove a defendant's knowing participation in a conspiracy, the government must show that the defendant: 1) knew that the central criminal design, such as distribution of narcotics in a given area, was in fact the purpose of the conspiracy; 2) knew or had reason to know that others were involved; and 3) knew or had reason to know that his own benefits from his dealings with them were probably dependant upon the success of the entire venture. *See United States v. Thomas*, 586 F.2d 123, 132 (9th Cir. 1978). A defendant's knowledge and dependancy are inferred from specific evidence of the nature of the criminal enterprise and the defendant's role in it. *Bibbero*, 749 F.2d at 588. It is not necessary for the government to prove that the defendant knew the exact scope of the conspiracy, the identity and role of each of the co-conspirators, or the details of the operations or any particular plan. *Id.* Proof that the defendant knew he was plotting in concert with others

to violate the law is sufficient to raise the necessary inference that he joined in the overall agreement. *Id.* .

### *2.* **Defendant can be held Accountable for Marijuana that is Foreseeable**

With respect to quantity of drugs, a defendant who is guilty of conspiracy to possess and distribute may properly be held accountable for any drugs possessed or distributed by coconspirators, so long as the drugs were foreseeable to him; it is not necessary that the defendant personally possessed all of the drugs for which he is held accountable. *United States v. Bauer*, 84 F.3d 1549, 1561 (9th Cir. 1996).

### **3.** **Aid and Abet in General and in a Conspiracy**

Title 18, United States Code, Section 2(a), states "[W]hoever commits an offense against the United States or aid, abets, counsels, commands, induces or procures its commission is punishable as a principal." The Ninth Circuit in *United States v. Lane* stated:

> [I]n order to aid and abet another to commit a crime it is necessary that a defendant in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, [and] that he seek by his action to make it succeed.

514 F.2d 22, 26 (9th Cir. 1975). *See also United States v. Castro*, 887 F.2d 988, 995 (9th Cir. 1989); *United States v. Cloud*, 872 F.2d 846, 850 (9th Cir. 1989). The Revision Note to § 2 makes clear that one who puts in motion or assists in the illegal enterprise, but intentionally refrains from the direct act constituting the completed offense, is guilty as a principal. Although a defendant can be guilty of aiding and abetting only if it is proven that a principal committed the crime, it is not necessary that the principal be identified or convicted of the crime. *United States v. Powell*, 806 F.2d 1421, 1424 (9th Cir. 1986).

### **C.** **18 U.S.C. §1956(h) Conspiracy to Commit Money Laundering**

Title 18, United States Code, §1956(h) provides as follows:
"Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

The elements of a §1956 conspiracy are:

6

> (1) that there was an agreement between two or more persons to commit money laundering; and
> (2) that the defendant joined the agreement knowing its purpose and with intent to further the illegal purpose.

*See United States v. Threadgill*, 172 F.3d 357, 366 (5th Cir. 1999).

Section 1956(h) is modeled on 21 U.S.C. §846, which does not require proof of an overt act. *See* Cong. Rec. 12241 (daily ed. Aug. 2, 1991) (money laundering conspiracy statute is modeled on section 846); H. Rep. No. 102-28, 102nd Cong., 1st Sess. (1991) at 49 (same). The Ninth Circuit has therefore held that §1956(h) does not require proof of an overt act. *See United States v. Tam*, 240 F.3d 797, 802 (9th Cir. 2001); *see also Whitfield v. United States,* 543 U.S. 209 (2005)(US Supreme Court held that a conspiracy to commit 18 U.S.C. §1956(h) money laundering does not require proof that at least one of the co-conspirators had committed an overt act.)

There is an extremely limited body of Ninth Circuit case law dealing with §1956(h) conspiracies. However, because the Ninth Circuit has recognized that §1956(h) is modeled after §846, it is likely that most of the precedential authority that is relevant to §846 conspiracy cases would also be relevant to §1956(h) conspiracy cases.

1. <u>"Proceeds" of Unlawful Activity</u>

In its recent decision in *United States v. Santos*, 128 S. Ct. 2020 (2008), The Supreme Court addressed the meaning of the work "proceeds" in the federal money laundering statute, 18 U.S.C. §1956(a)(1)(A)(I). That statute makes it a crime, "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, [to] conduct[] such a financial transaction with in fact involves the proceeds of some form of unlawful activity." In *Santos*, the transaction alleged as money laundering was an illegal lottery operator's payments to his winners and runners using receipts from his lottery operation, which violated 18 U.S.C.§1955.

Relying on the rule of lenity, a four Justice plurality concluded that the word "proceeds" in the money laundering statute means profits and not, as the government had argued, gross receipts. *Santos*, 128 S. Ct. at 2023-25 (plurality opinion). Four other Justices dissented from

7

the plurality's view, taking the position that the word "proceeds" in the money laundering statute means "the total amount brought in" --i.e. the gross receipts of the underlying offense. *Id.* at 2035-45 (Alito, J., dissenting).

The government's position is that *Santos* holds that "proceeds," as used in Section 1965(a)(1), means "profits" only when the predicate offense charged is the operation of an illegal gambling business, in violation of Section 1955. As the underlying offense implicated in the instant case in not an illegal gambling business, but rather the trafficking of illegal narcotics, *Santos* is inapposite.

**D.      21 U.S.C. §856(a)(2) Managing a Drug Involved Premises**

Title 21, United States Code, §856(a)(2) provides that:
"Except as authorized by this subchapter, it shall be unlawful to– manage or control any place, whether permanently or temporarily, either as an owner, lessee, agent, employee, occupant, or mortgagee, and knowingly and intentionally rent, lease, profit from, or make available for use, with or without compensation, the place for the purpose of unlawfully manufacturing, storing, distributing, or using a controlled substance"

Title 21 U.S.C. § 856 was enacted by Congress for the purpose of creating a new felony to punish a person's use of property for activities pertaining to manufacturing, distributing, or using controlled substances. *United States v. Sturmoski*, 971 F.2d 452, 461 (10th Cir. 1992). *See also United States v. Chen*, 913 F.2d 183, 188 (5th Cir. 1990), for a discussion regarding the legislative history of the statute. Therefore, there is no double jeopardy issue if a defendant is charged with substantive acts in violation of both § 856 and § 841 (or conspiracies to violate them) for conduct arising from the same incident. The plain language of the statute indicates that Congress intended to punish conspiracies to violate § 841(a)(1) separately from conspiracies to violate § 856(a)(1). *United States v. Johnson*, 977 F.2d 1360, 1374-75 (10th Cir. 1992); *United States v. Church*, 970 F.2d 401, 407, (7th Cir. 1992).

The law is sometimes called the "crack house statute," but this nickname is somewhat misleading, since its application is not limited to either "crack" or to "houses." The words of the statute are not ambiguous. The statute applies to "any controlled substance," not just

8

"crack." *See United States v. Gibson*, 55 F.3d 173 (5th Cir. 1995) and *United States v. Basinger*, 60 F.3d 1400 (9th Cir. 1995) (applying statute to methamphetamine); *United States v. Wood*, 57 F.3d 913 (10th Cir 1995)(applying § 856 in a marijuana case). The cases are clear that the statute also applies to structures other than "houses." For example, § 856 can properly be applied to buildings used in a successful legitimate business, such as a car dealership. *United States v. Tamez*, 941 F.2d 770 (9th Cir. 1991). It is not necessary that the defendant be the owner of the property in question. *United States v. Wood*, 57 F.3d 913, 919 (10th Cir. 1995). However, when the structure involved is a residence, "the defendant must have a 'substantial connection' to the home and must be more than a 'casual visitor' " in order to be charged under § 856. *United States v. Verners*, 53 F.3d 291, 295-96 (10th Cir. 1995).

Neither is it necessary that the structure be used exclusively (or even primarily) for the manufacture, distribution, or use of controlled substances. "Proof that manufacturing, distributing or using illegal drugs is one among several uses for which a facility is maintained is sufficient to meet the purpose prong of § 856(a)(1)." *United States v. Gibson*, 55 F.3d 173, 181 (5th Cir. 1995) (citing *United States v. Roberts*, 913 F.2d 211, 220 (5th Cir. 1990)). "It is highly unlikely that anyone would openly maintain a place for the purpose of manufacturing and distributing [illicit drugs] without some sort of 'legitimate cover—as a residence, a nightclub, a retail business, or a storage barn.'" *Id.*; *United States v. Church*, 970 F.2d 401, 407, (7th Cir. 1992).

## E.  21 U.S.C. §848 Continuing Criminal Enterprise (CCE)

A person is engaged in a continuing criminal enterprise if–

> (1) he violates any provision of this subchapter or subchapter II of this chapter the punishment for which is a felony, and
> (2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter--
> (A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and
> (B) from which such person obtains substantial income or resources.

Thus, in proving a defendant engaged in a CCE, the government must prove the defendant

committed or directed the commission of several felony violations of the federal narcotics law, as set forth in Title 21, U.S.C. §§801-966. Although the Supreme Court held in *Rutledge v. United States*, 517 U.S. 292 (1996), that conspiracy is a lesser included offense within the CCE statute, conspiracy may be used as a predicate offense when charged in the same indictment. *See United States v. Long*, 301 F.3d 1095, 1107 (9th Cir. 2002), cert. denied, 537 U.S. 1216 (2003).

The second element of the CCE offense requires that the predicate felony be committed as a part of a "continuing" series of federal narcotics violations. 21 U.S.C. § 848(c)(2). As the Second Circuit recognized in *United States v. Young*, 745 F.2d 733, 751 (2d Cir. 1984), the first and second elements of the Continuing Criminal Enterprise offense overlap; both refer to predicate federal narcotics felony violations. Because the statute itself does not specify the number of predicate violations necessary to establish the continuing series element, the federal courts have developed a "Rule of Three." A consensus has developed among the circuits that the United States must prove that the defendant committed at least three felony violations of the federal narcotics laws to establish the "continuing series" element of the continuing criminal enterprise. *See United States v. Baker*, 10 F. 3d 1374 (9th Cir. 1993).

The CCE statute also requires the United States to prove that the defendant acted "in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management," In *Ruthledge v. United States*, 517 U.S. 292, 300 (1996), the Supreme Court unanimously held "the phrase 'in concert' signifies mutual agreement in a common plan or enterprise," an agreement identical to one necessary to support a conspiracy conviction. However, Section 848 does not require proof that the defendant acted in concert with five or more persons at the same time or that the five participants worked in concert with each other or at the same time. *United States v. Garcia*, 988 F.2d 965, 968 (9th Cir. 1993). Further, the United States need not prove that the five individuals collectively engaged in even one specific criminal transaction comprising the continuing series of violations, *United States v. Burt*, 765 F.2d 1364, 1366 (9th Cir. 1985).

10

Courts have generally ruled that the ordinary meaning of the word "organizer" in §848 does not require that the organizer control those whom he or she organizes. *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993); *United States v. Ray*, 731 F.2d 1361, 1367 (9th Cir. 1984). The Ninth Circuit, however, requires a showing that the organizer exercises some managerial responsibility, i.e. he fulfills some role beyond a mere conspirator. *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993); *United States v. Delgado*, 4 F.3d 780, 786 (9th Cir. 1993) (Hall, J. concurring); *United States v. Jerome*, 942 F.2d 1328 (9th Cir. 1991).

The 9th Circuit has also emphasized that the CCE statute deals with both management and coordination recognizing that one need not be a day-to-day supervisor to play an important role in a criminal enterprise. The defendant need only exert some type of influence or control, such as shown by an individual's compliance with the CCE defendant's direction or instruction. *United States v. Long*, 301 F.3d 1095, 1107 (9th Cir. 2002), cert. denied, 537 U.S. 1216 (2003). The final statutory element necessary to prove a CCE offense is that the defendant derived "substantial income or resources" from the continuing series of violations. The Ninth Circuit has recognized that Congress intended this provision to limit the statute's application to large-scale drug dealers, without requiring the United States to prove that the defendant was a "kingpin." *United States v. Medina*, 940 F.2d 1247, 1251 (9th Cir. 1991). The meaning of "substantial income or resources" normally is a question for the trier of fact. Neither the statute nor the case law sets forth any threshold amount required to establish this element, allowing its scope to develop on a case-by-case basis. *United States v. Medina*, 940 F.2d 1247, 1251 (9th Cir. 1991).

Proof that the CCE defendant derived substantial income or resources from the illegal enterprise can be based on either direct or circumstantial evidence. *Medina*, 940 F.2d 1247, 1252. Drug traffickers commonly accept drugs from a supplier on consignment under an agreement to pay the purchase price at a later date after reselling the drugs. Consignment debt indicates anticipated profit, which, in conjunction with other evidence, is circumstantial evidence of substantial income or resources already obtained from the criminal enterprise.

11

*Id.* at 1251-1252.  Records, drug ledgers, sophisticated electronic scale and instruments, and similar production assets are also evidence a defendant obtained substantial "income or resources." *United States v. Baker*, 10 F.3d 1374 (9th Cir. 1993).   Direct evidence may, of course, include statements of the defendant or a co-conspirator indicating receipt of substantial income or resources from the enterprise. *United States v. Garcia*, 988 F.2d 965, 967 (9th Cir. 1993).  Such statements may be offered, as admissions of the defendant, as co-conspirator statements, or through sources such as court-ordered electronic surveillance.

Moreover, the courts have found that a defendant has exercised managerial responsibility by providing attorneys' fees for arrested co-conspirators. *United States v. Jenkins*, 904 F.2d 549, 554 (10th Cir. 1990); *United States. v. Gonzalez*, 866 F. 2d 781, 784 (5th Cir. 1989); *United States v. Losada*, 674 F.2d 167, 174 (2d Cir. 1982)(noting CCE can be proven by employee who is in charge of arranging attorneys' fees for arrested members). In this case, the government will elicit testimony that Gonzalez managed and directed his co-conspirators by directing them to a specific attorney who either represented the associate or found legal representation for the associate after arrest.  As examples, the evidence will include Gonzalez's referral to attorney Craig Mehrens and/or the payment of attorneys' fees for the following co-conspirators:  Walter Franks (arrested for driving a load of marijuana in 1998 in Cortez, CO); Craig Weaver (arrested for driving a load of marijuana in 1999 in Missouri); and Adolfo Diaz (arrested for possession of 2,500 lbs. of marijuana in 1999 in Phoenix). Additionally, Gonzalez directed co-conspirator Kellie Gonzalez to meet with Craig Mehrens regarding her criminal exposure for drug trafficking activities in this conspiracy.  Gonzalez also sent co-conspirator Dale Mueller to the same attorney for tax consultation.  Accordingly, the government believe this evidence of directing legal representation to be highly relevant in the prosecution of a continuing criminal enterprise. [1]

---

[1] Gonzalez's funding legal representation is also relevant in proving that he engaged in promotional and concealment money laundering. *See United States v. Elso*, 422 F.3d 1305, 1310 (11th Cir. 2005)("giving money to an attorney, even as an attorney's fee, is a violation of section 1956(a)(1)(B)(i) if the intent was to conceal or disguise the money); *United States v. France*, 164 F.3d 203, 209 (4th Cir. 1998)(posting bail for confederate in drug trafficking scheme promotes

The government intends to present evidence and testimony that will demonstrate that Gonzalez committed a series of felony violations of federal narcotics law, as part of a continuing series of federal narcotics violations that he acted in concert with five or more persons as an organizer and/or supervisor. Gonzalez derived substantial income from the enterprise.

## IV. EVIDENTIARY ISSUES

### A. <u>Summary Evidence</u>

The government anticipates admitting summaries into evidence pursuant to Fed. R. Evid. 1006. Rule 1006 provides that evidence may be admitted "in the form of a chart, summary, or calculation" where "[t]he contents of voluminous writings, recordings, or photographs" cannot conveniently be examined in court. Trial courts are given wide discretion in the introduction of summary evidence. *United States v. Williams*, 952 F.2d 1504, 1519 (6th Cir. 1991).

Under Rule 1006, the underlying documents or recordings need not be "in evidence." *See United States v. Smyth*, 556 F.2d 1179, 1184 (5th Cir. 1977). The rule only requires that the summaries be based on admissible documents which have previously been made available to the opposing side at a reasonable time and place. *United States v. Johnson*, 594 F.2d 1253, 1255 (9th Cir. 1979). It is also not necessary that the witness presenting the summary be an expert witness or have specialized knowledge if the chart does not contain complicated calculations requiring expert explanation. *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984). Under Rule 1006, the summary itself is the evidence which the trier of fact may consider. *United States v. Strissell*, 920 F.2d 1162 (4th Cir. 1990). The jury may take summary evidence, like other evidence, with them into the jury room. *United States v. Orlowski*, 808 F.2d 1283, 1289 (8th Cir. 1986).

---

the scheme).

Summaries, including the captions or headings of charts, may reflect conclusions or assumptions that are supported by the evidence. *Jennings,* 724 F.2d at 442; *United States v. Diez,* 515 F.2d 892, 905 (5th Cir. 1975).

While an additional jury instruction may be unnecessary if there is no dispute as to the accuracy of the chart or summary, the Ninth Circuit Jury Committee has provided model jury instructions regarding charts and summaries in evidence. The instructions read:

> Certain charts and summaries have been received into evidence. Charts and summaries are only as good as the underlying supporting material. You should, therefore, give them only such weight as you think the underlying material deserves.

The government intends to present summaries of money laundering activity through IRS Special Agent Cory Jenkins. Special Agent Jenkins will testify to summaries based on documentary evidence that has been made available to the defense.

## B. Co-Conspirator Statements

Statements by co-conspirators may be admissible independent of the hearsay exception under Fed. R. Evid. 801(d)(2)(E). For example, such statements may be admitted merely as background to place subsequent events or meetings in context. *See United States v. Inadi*, 475 U.S. 387, 398 n.11 (1986) (noting admissibility of co-conspirator statements to prove background to conspiracy or to explain significance of events); *United States v. Payne*, 944 F.2d 1458, 1472 (9th Cir. 1991) (noting non-hearsay purpose of statements offered to show effect on listener and to explain sequence of events).

Fed. R. Evid. 801(d)(2)(E) provides that a statement offered against a party is not hearsay if it is "a statement by a co-conspirator of a party during the course of and in furtherance of the conspiracy." In order for the court to admit a statement under this rule, the government must show by a preponderance of the evidence: (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the statements were made during the course of and in furtherance of the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 173 (1987).

1. The Court's Preliminary Determinations

In making the preliminary factual determinations under Rule 801(d)(2)(E), the trial court may consider, along with other evidence, the actual hearsay statements sought to be admitted. *Id.* at 181; *United States v. Schmit*, 881 F.2d 608, 610 (9th Cir. 1989). A judge may receive the hearsay evidence and give it "such weight as his judgment and experience counsel." *Bourjaily,* 483 U.S. at 181.

The procedure for determining the admissibility of co-conspirator statements is left to the discretion of the trial court. *Id.* at 177-81; *United States v. Zemek*, 634 F.2d 1159, 1169 (9th Cir. 1980). The Ninth Circuit does not have a "preference" for the order of proof of admissibility of such statements. The court is not required to conduct a separate evidentiary hearing on the preliminary determinations before admitting co-conspirator statements. *Zemek*, 634 F.2d at 1169. An offer of proof in the government's trial memorandum can suffice. *United States v. Kenny*, 645 F.2d 1323, 1333-34 (9th Cir. 1981).

The court may allow the government to introduce coconspirator statements before the existence of the conspiracy is established. *United States v. Arbelaez*, 719 F.2d at 1460; *United States v. Miranda-Uriarte*, 649 F.2d 1345, 1349 (9th Cir. 1981). The evidence can be stricken if the government does not ultimately satisfy the foundational requirements. *E.g. Zemek*, 634 F.2d at 1169.

2. Statements "In Furtherance of the Conspiracy"

To admit statements under Rule 801(d)(2)(E), the government must show by a preponderance of the evidence that they were made "in furtherance" of the conspiracy. Statements meet this requirement if they further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. *United States v. Yarbough*, 852 F.2d 1522, 1535 (9th Cir. 1988). The statements must somehow assist the conspirators in achieving their objectives. *United States v. Layton*, 720 F.2d 548, 556-57 (9th Cir. 1983).

Statements should be examined in the context in which they are made to determine if

they advance the objectives of the conspiracy. *Layton,* 720 F.2d at 556. For example, statements made to induce enlistment or further participation in the group's activities are considered to be "in furtherance" of the conspiracy. *Yarbough*, 852 F.2d at 1535.

Courts also have found statements informing co-conspirators about future plans to be in furtherance of the conspiracy. *See, e.g., United States v. Moody*, 778 F.2d 1380 (9th Cir. 1986). In *Moody*, the court admitted co-conspirator statements about plans to ship marijuana to a particular location and who would pick it up and smuggle it. The court noted that the co-conspirator making the statements had participated in planning the conspiracy and had a substantial interest in its continuing operation. *Id.* at 1383.

Pre-conspiracy statements can be admitted against a defendant under Rule 801(d)(2)(E) if the discussion related in some way to the beginning of the defendant's participation in the conspiracy and the discussion tends to show the defendant had the proper state of mind. *United States v. Del Purgatorio*, 411 F.2d 84, 86-87 (2d Cir. 1969).

The government intends to lay the appropriate foundation for co-conspirator statements.

Respectfully submitted this 10th day of September, 2008.

                              DIANE J. HUMETEWA
                              United States Attorney
                              District of Arizona

                               S/Kevin M. Rapp
                              KEVIN M. RAPP
                              Assistant U.S. Attorney


                               S/Jennifer E. Green
                              JENNIFER E. GREEN
                              Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10th, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Rena P. Glitsos
Attorney for defendant

By: S/Raquel Lopez